# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| EQUIPOISE PM LLC and JOHN PRICE,  )<br>  )<br>    Plaintiff,  )<br>  )<br>    v.  )<br>  )<br>INTERNATIONAL TRUCK AND ENGINE  )<br>CORP., a Delaware corporation, K. NEAL  )<br>INTERNATIONAL TRUCKS f/k/a JOHN  )<br>PRICE INTERNATIONAL TRUCK, INC., a  )<br>Delaware corporation, KNEAL HOLDINGS,  )<br>INC., a Maryland corporation, PAUL KOVACH,  )<br>PAUL GRZEMSKI, and LARRY WAKE,  )<br>  )<br>    Defendants.  )<br>  )<br>  )<br>INTERNATIONAL TRUCK AND ENGINE  )<br>CORPORATION and J. PRICE  )<br>INTERNATIONAL, INC., n/k/a K. NEAL  )<br>INTERNATIONAL TRUCKS, INC.,  )<br>  )<br>    Defendants-Counterplaintiffs and  )<br>    Third-Party Plaintiffs  )<br>  )<br>    v.  )<br>  )<br>EQUIPOISE PM LLC, Plaintiff-  )<br>Counterdefendant, and JOHN PRICE,  )<br>  )<br>    Third-Party Defendants.  )<br>  )<br>  )  | Case No. 05 C 6008<br><br>Judge Ronald A. Guzman<br><br>Magistrate Judge Arlander Keys |

## DEFENDANTS' INITIAL MOTION FOR ENTRY OF
## JUDGMENT AS A MATTER OF LAW

    Defendants International Truck & Engine Corporation and J. Price International, Inc.,

n/k/a K. Neal International Trucks, Inc., Paul Kovach, Paul Grzemski, and Larry Wake

(collectively "International" or "Defendants") move pursuant to Rule 50(a)(1) of the Federal Rules of Civil Procedure for judgment as a matter of law on the basis that Plaintiffs have failed to carry their burden of proof as to every element of their claims against Defendants. Pursuant to this Court's instruction in open court on February 15, 2008, Defendants reserve and do not waive any and all ground for judgment as a matter of law to be raised in a subsequent motion. Defendants assert the limited claims below, on the basis that, if granted, the need to present certain testimony or argument will be obviated, and will accelerate the progress of this trial.

**I.     STANDARD FOR ENTRY OF JUDGMENT AS A MATTER OF LAW**

Rule 50 of the Federal Rules of Civil Procedure provides for the entry of judgment as a matter of law against a party on each issue or claim for which that party has failed to carry its burden of proof at trial. Fed. R. Civ. P. 50(a)(1). "The standard governing a Rule 50 motion mirrors that employed in evaluating a summary judgment motion except that the two motions are made at different times during the proceedings before the district court." *Winters v. Fru-Con Inc.*, 498 F.3d 734, 746 (7th Cir. 2007) (quoting *Appelbaum v. Milwaukee Metro. Sewerage Dist.*, 340 F.2d 573, 578 (7th Cir. 2003) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

If "the non-movant presents insufficient evidence upon which a reasonable person could properly base a verdict in his favor, judgment as a matter of law for the movant is appropriate. Moreover, a mere scintilla of evidence will not prevent a directed verdict." *James v. Milwaukee County*, 956 F.2d 696, 698 (7th Cir. 1992) (Internal citations omitted). Therefore, judgment as a matter of law should be granted when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." *Fru-Con Inc.*, 498 F.3d at 746; *May v. Libby*, Nos. 05-1473 & 05-1647, 2007 U.S. App. LEXIS 27796, *5 (7th Cir. Nov. 30, 2007).

## II. PLAINTIFFS HAVE FAILED TO CARRY THEIR BURDEN OF PROOF

Plaintiffs Equipoise PM LLC ("Equipoise") and John Price ("Price") have failed to adequately substantiate certain issues and claims, and therefore, this Court should find for Defendants on the issues raised below as a matter of law.

### A. Punitive Damages Should Not Be Charged Or Argued To The Jury.

"The preliminary question of whether the facts justify the imposition of punitive damages in a particular case is a question of law." *Cornell v. Langland*, 109 Ill. App. 3d 472, 474, 440 N.E.2d 985, 987 (1st Dist. 1982) (citing *Kelsay v. Motorola, Inc.*, 74 Ill. 2d 172, 384 N.E.2d 353, 359 (1978)). "Illinois courts do not favor punitive damages and insist that plaintiffs must establish not only simple fraud but gross fraud, breach of trust, or other extraordinary or exceptional circumstances clearly showing malice or willfulness." *Europlast, Ltd. v. Oak Switch Systems, Inc.*, 10 F.3d 1266, 1276 (7th Cir. 1993) (citing *AMPAT/Midwest, Inc. v. Illinois Tool Works, Inc.*, 896 F.2d 1035, 1043 (7th Cir. 1990)). Illinois courts do not favor punitive damages because of their penal nature, and "courts must be cautious in seeing that they are not improperly or unwisely awarded." *Id.* (citing *Deal v. Byford*, 127 Ill. 2d 192, 537 N.E.2d 267, 272 (1989)).

#### i. Plaintiffs Have Waived Any Right To Punitive Damages.

Plaintiffs, with the exception of their proposed jury instructions, have not discussed, argued, or even mentioned punitive damages, or any evidence that would support punitive damages, to the Court or the jury. Nor have Plaintiffs discussed, argued, or even mentioned any predicate conduct of Defendants that could reasonably support a claim for punitive damages, i.e. "showing malice or willfulness." When a plaintiff fails to assert a claim for punitive damages during its case in chief, it is prejudicial to then submit the issue of punitive damages to the jury. *See Brewer v. Wal-Mart Stores, Inc.*, 87 F.3d 203, 209 (7th Cir. 1996).

In *Brewer*, the plaintiff initially alleged in its complaint for malicious prosecution that the defendant's conduct was malicious and warranted the imposition of punitive damages. Apart from the court's findings of multiple problems with plaintiff's presentation of its case, the jury never heard anything about punitive damages until after the evidence was closed. *Id*. at 208. The court found the reasonable implication of the lack of any mention of punitive damages by the plaintiff to the jury was that the issue of punitive damages had been withdrawn. The court held that the realistic view of plaintiff's conduct was that the defendant was prejudiced in all phases of the trial, from its opening to its closing, including particularly the witnesses called and their examinations. *Id*. at 209. Consequently, "punitive damages were alleged and then by plaintiff's conduct abandoned, withdrawn, or waived." *Id*. Additionally, the court held that the "sequence of things might even suggest to the jury the possibility that it was the judge who, after hearing the evidence, had added the punitive damages issue with the implication that punitive damages were justified." *Id*. at 208. Accordingly, the Seventh Circuit vacated the award of punitive damages. *Id*. at 209.

This case is analogous. Plaintiffs' counsel has not argued for, discussed, or even mentioned punitive damages, or any evidence that would support punitive damages, in its opening, direct, or cross-examinations of the witnesses in its case in chief. Consequently, Defendants' counsel has not argued, discussed, or rebutted any testimony relevant to punitive damages in the opening statement or in any examination of the witnesses. If Plaintiffs' counsel does not raise the issue, it is unreasonable to expect Defendants' counsel to be the party to voluntarily discuss the matter which "could only be detrimental" to the Defendants. *Id*. At this late stage of the trial proceedings, it would be unfairly prejudicial to the Defendants to have the

jury instructed, and asked to deliberate, on punitive damages for the very reasons articulated in *Brewer*.

### ii. Defendants' Conduct Does Not Warrant Punitive Damages As A Matter Of Law.

As mentioned above, the initial determination of whether the facts of a particular case justify the imposition of punitive damages is one of law. *Europlast*, 10 F.3d at 1276. Illinois courts do not favor punitive damages and insist that plaintiffs must establish not only simple fraud but gross fraud, breach of trust, or other extraordinary or exceptional circumstances clearly showing malice or willfulness." *Id*.[1] Because of punitive damages' penal nature, such damages "are not favored in the law, and courts must be cautious in seeing that they are not improperly or unwisely awarded." *Roboserve, Inc. v. Kato Kagaku Co., Ltd.*, 78 F.3d 266, 276 (7th Cir. 1996). "To justify punitive damages, the allegedly outrageous conduct must 'involve some element of outrage similar to that found in a crime.'" *Id*. (citing Restatement (Second) of Torts § 908, comment b (1979)). "Without some evidence … clearly indicating malice or willfulness … under Illinois law the question of punitive damages is not even submitted to the jury." *Id*.

Plaintiffs have not presented any evidence of conduct by any Defendant in this case that can appropriately be classified as so "outrageous" as to be "similar to that found in a crime." If Defendants are found culpable of any tortious conduct, it is ***only*** tortious, as there is no legally sufficient basis for a reasonable jury to find that the Illinois criteria for imposing punitive damages is met here.

The Seventh Circuit has reversed the denial of a judgment as a matter of law on the issue of punitive damages when the conduct of the defendant does not warrant punitive damages. In

---

[1] Equipoise's claim for breach of fiduciary duty arises under Delaware law. For purposes of this motion, the standard for punitive damages under Illinois and Delaware law are the same. *See, e.g., Jardel Co., Inc. v. Hughes*, 523 A.2d 518, 529 (Del. 1987).

*Roboserve*, the plaintiff, Roboserve, leased and serviced automated hotel mini-bars, and sued the owner and operator of the Hyatt Regency Hotel in Chicago for breach of contract, wrongful termination, and fraud. Roboserve had entered into an agreement with the hotel operator to provide mini-bars to its hotel rooms for a 5 year term. Despite Roboserve's hope, and the operator's promise to use Roboserve's mini-bars nationally, Roboserve later discovered that the operator had also contracted with a competitor. The operator stated it was a test to evaluate the two competitors for a period of one year, with the winner to potentially obtain a national contract. Roboserve ultimately won the "test," and began negotiations with the operator to replace the competitors' mini-bars with its own. However, Roboserve later learned that the "test" was a mere pretext, and the operator terminated Roboserve's contract, and went with the competitor instead. The jury awarded Roboserve compensatory and punitive damages. The owner appealed, denying that the evidence "suggest[ed] conduct sufficiently gross or outrageous to justify the award of any punitive damages, let alone $6 million." *Id*. at 272.

The Seventh Circuit agreed, holding that the review of the record did not reveal any evidence of "'gross,' 'wanton' or 'malicious' conduct on the part of [the operator] or [owner]." *Id*. at 276. The court found that "rather than evidence of outrageous conduct, what emerg[ed] from a review of the facts [was] a picture of a highly competitive marketplace with sophisticated advocates on all sides jockeying for position and profit." *Id*. While the court found that the operator "played loose with its contractual obligations and was less than candid – and may even have lied – about its present actions and future plans," the conduct was no more than "simple deceit and obfuscation" and could not alone "support a punitive damage award." *Id*. The court found that the lack of indication that either defendant "intended to financially damages [sic]" the plaintiff meant that evidence justifying punitive damages under Illinois law was absent. *Id*. In

other words, given "the strong aversion of the Illinois courts toward punitive damages" a plaintiff "must at least put forth some evidence of intent to injure; merely withdrawing business opportunities is not enough." *Id*. Accordingly, the Seventh Circuit reversed the district court and held the "district court erred in denying [defendant's] motion for judgment as a matter of law on the question of punitive damages." *Id*. at 277.

*See also, Kempner Mobile Electronics, Inc. v. Southwestern Bell Mobile Systems*, 428 F.3d 706, 714-15 (7th Cir. 2005) ( the Seventh Circuit affirmed the district court's refusal to submit to the jury instructions on punitive damages finding no evidence of fraud, aggravation, malice, or wanton disregard); *F:A J Kikson v. Underwriters Laboratories, Inc.*, 492 F.3d 794, 801 n. 2 (7th Cir. 2007) (reversing a verdict for plaintiff's tortious interference claim and stating that the punitive damages award was "problematic" and even if the predicate claim was not reversed, the "underlying conduct did not involve an element of outrage similar to that found in crime in order to support punitive damages"); *Zelinski, Jr., v. Columbia 300, Inc.*, 335 F.3d 633, 641 (7th Cir. 2003) (affirming district court's vacating of punitive damage award finding that there was no malice or evil motive, and plaintiff failed to show that the defendant exhibited a conscious and deliberate disregard for the rights of others"); *Europlast*, 10 F.3d at 1276-77 (reversing district court's submission of punitive damages to jury finding "little if any evidence of 'gross,' 'wanton' or 'malicious' conduct on the part of [the defendant]").

There is no evidence here of any conduct that could reasonably be characterized as malicious or with any evil motive. At most, this is a case of withdrawal of a business opportunity, and nothing more. Consequently, and based on the foregoing authorities, the issue of punitive damages should not be submitted to the jury.

### B. Equipoise's Breach Of Contract And ADDCA Claims Fail As A Matter Of Law.

7

Equipoise's ADDCA and breach of contract claims fail as a matter of law based on Illinois law requiring strict adherence to conditions precedent in option contracts. Equipoise's right to purchase International's JPI stock under the Stock Purchase Agreement is classified as an option contract because it was exercisable at Equipoise's option, as Plaintiffs alleged in their First Amended Complaint, and as Morton testified. (Am. Comp. at ¶¶ 43, 51, 57, 64) (First Amended Complaint attached hereto as Exhibit A).

"Illinois law is particularly adamant in requiring that option contracts be considered exercised only if the person holding the opting power adheres exactly to the conditions precedent to its effective consummation." *R.E. Davis Chem. Corp. v. Diasonics, Inc.*, 924 F.2d 709, 713 (7th Cir. 1991) (citing *Southwest Forest Indus., Inc. v. Sharfstein*, 482 F.2d 915, 924 (7th Cir. 1972). The "satisfaction of a condition is generally subject to the rule of strict compliance." *MXL Indus. v. Mulder*, 252 Ill. App. 3d 18, 25, 623 N.E.2d 369, 374 (2d Dist. 1993).

In *MXL Indus.*, the plaintiff filed an action for declaratory judgment against the defendant seeking a determination that its obligations had been met with respect to an early termination provision of a commercial building lease. Under the early termination provision, the tenant could cancel the lease at any time after a certain date by paying to the landlord all sums then due and an additional four months rent. After the date for early termination passed, the plaintiff submitted a check for four months rent less the security deposit, and a release to be executed by the defendant. The defendant contested the payment, stating that the plaintiff also owed rent for the coming month and there were various physical discrepancies at the premises that would require repair.

The trial court, affirmed on appeal, found that the notice provided by the plaintiff "did not terminate the lease because plaintiff failed to satisfy all obligations which was a condition

8

precedent to early termination," including: that notice provided by the plaintiff did not terminate the lease because the plaintiff failed to satisfy all obligations which was a condition precedent to early termination; that the plaintiff was liable for the subsequent month's rent; and that the plaintiff's insistence that a release be executed was not in conformity with the lease, and therefore an improper attempt to modify the lease. *Id*. at 24, 623 N.E.2d at 373. The court held that under Illinois law, "the exercise of an option is ineffective where the purported exercise of it varies ***in any way*** the terms of the option agreement." *Id*. at 27, 623 N.E.2d at 376 (Emphasis added). While the court recognized that "a rule of strict compliance might lead to harsh results, such a rule tends to enforce commercial certainty." *Id*. at 28, 623 N.E.2d at 376 (Citations omitted). Further, "a court cannot construe the contract contrary to the plain and obvious meaning of the language and it is presumed that terms and conditions are purposefully inserted and that the language is not idly employed." *Id*. at 29, 623 N.E.2d at 377. Because the plaintiff failed to strictly adhere to the terms of the early termination provision, the court found that the option was never exercised. *Id*.

The rule of strict adherence has broad applicability under Illinois law to all option contracts. *See, e.g., Von Der Ruhr v. Immtech Int'l, Inc.*, 362 F. Supp. 2d 922, 926 (N.D. Ill. 2004) (stating rule of strict adherence in case involving option contract for the purchase of stock); *R.E. Davis Chem. Corp*, 924 F.2d at 712-13 (stating rule of strict adherence in case involving option contract for upgrade option on MRI machine).

To exercise its option under the Stock Purchase Agreement, Equipoise was required to: (i) have year-end audited financial statements; (ii) have readily available funds; and (iii) purchase International's JPI stock within sixty (60) days of the receipt of the dealership's audited

9

year-end financial statements. Equipoise performed none of the conditions precedent to be able to exercise its option.

Despite the plain language of the Stock Purchase Agreement, Equipoise never received audited financial statements for JPI. Price testified he understood the difference between audited and reviewed financial statements. (Tr. at 622). Price was informed as early as September 2004 that JPI would be receiving reviewed financial statements for the 2004 fiscal year. (DTE 68). On January 28, 2005, Price was told again in writing that he was receiving reviewed financial statements for year-end 2004, not audited, and the draft reviewed statement attached specifically described the difference between a review and an audit. (DTE 87). Price and Equipoise were not dependent on International to receive audited financial statements. Price admitted he had the authority as president of JPI to request audited financial statements:

> Q. My question is a different question. My question is: Didn't you think it was your right as the president of the dealership, as a member of its board, as a representative of one of the two shareholders to say to the board or to say to ITEC, fellows, I think we ought to get an audit this year, not just a review?
>
> A. Yes.
>
> Q. You never did that though, did you?
>
> A. No, I didn't.

(Tr. at 670). Despite the authority and opportunity, Equipoise never received audited financial statements.

There is no evidence that Equipoise had $3,300,000 in readily available funds to purchase International's JPI stock. Morton testified that he did not have the amount in cash. Morton testified that his credit line was only $600,000, of which approximately $450,000 had already been drawn. $150,000 is not $3,300,000. Morton made no attempts, prior or subsequent to the February 28, 2005 letter, to ever extend his credit line, obtain any additional financing, liquidate

10

any securities or other investments, or find *any* sources of cash on which to exercise the option.[2]
There is no evidence that Morton had the means to come up with $3 million. Equipoise could have introduced evidence of Morton's tax returns or financial statements, but did not. Equipoise could have called a bank officer to testify that Morton could have received a $3 million loan, but did not.

Equipoise never received audited year-end financial statements, never acquired "readily available funds," and consequently, never could have purchased International's JPI stock within 60 days of receipt of year-end audited financial statements. As the testimony of Grzemski corroborated, the transaction was required to be consummated within 60 days of receipt of audited financial statements because any point in time after the 60 days had passed would potentially no longer accurately reflect the value of the dealership. The failure to satisfy the conditions precedent negate any claim that Equipoise ever exercised its option.

Equipoise's failure to: (i) have year-end audited financial statements; (ii) have readily available funds; and (iii) purchase International's JPI stock within sixty (60) days of the receipt of the dealership's audited year-end financial statements is a failure to "strictly adhere" to the conditions precedent to the option, and therefore, under Illinois law, Equipoise's option was never exercised.

### C. Equipoise's Damages Calculation Is Deficient As A Matter Of Law.

---

[2] Morton testified this purported credit line was at an interest rate approximately one point above prime. Even assuming this figure is correct, no evidence exists to show: (i) the ability of Equipoise (or Morton individually) to pay the approximately $20,000 in monthly interest payments; (ii) the ability to provide adequate security for a $3,300,000 loan (JPI did not have any significant unencumbered assets and its net profit in 2004 was insufficient to pay the interest on $3,300,000 let alone any principal; and (iii) even assuming Morton possessed adequate security personally, whether he would be willing to personally be liable on a $3,300,000 debt. In short, Morton's testimony is wholly speculative. *Green v. Nat'l Steel Corp.*, 197 F.3d 894, 898 (7th Cir. 1999) ("bald assertions" are "insufficient to create a material dispute").

11

Equipoise intends to argue to the jury for damages based on: (i) the difference in the fair market value of International's 85% stock it claims it was entitled to purchase and the contract price for that stock under the Stock Purchase Agreement; (ii) expenses incurred in the development of the Forestville property by Equipoise; and (iii) the bonus payments under the Bonus Agreement for years 2004 and 2005. None of these damages can be awarded based on the evidence adduced at trial.

### i. Equipoise's Contract Damages

Equipoise claims it is entitled to recover the difference, if any, between the fair market value of International's 85% share of JPI's stock and the contract price under the Stock Purchase Agreement. Under long established Illinois law, the measure of damages for breach of contract to sell stock (or anything) is the difference between the market value of the stock, if it had a market value, or otherwise the actual value, and the price the stock was contracted to be paid for. *Peck v. Beacom*, 272 Ill. App. 424, 3 (1st Dist. 1933).

Equipoise's calculation of its damages uses a fair market value of ***100% of the dealership***, less the contract price for ***85% of the JPI stock***. As Equipoise has presented in its Pretrial Order (Plaintiffs' Damages Calculation from its Pretrial Order is attached hereto as Exhibit B):

$8,500,000 (100% of JPI's Fair Market Value)
$3,300,000 (Contract Price for 85% of JPI's stock)
**$5,500,000**[3] (sic).

Since the measure of damages is limited to the stock that Equipoise contracted to buy, International's 85%, Equipoise cannot recover for damages on the 15% of JPI stock Equipoise already owned. Therefore, if Equipoise prevails on its claims, the most it can claim would be the

---

[3] Plaintiffs presumably intended to state the damages as $5,200,000 ($8.5 - $3.3 = $5.2).

difference between 85% of the fair market value of the stock it had an option to purchase, and the contract price it would have had to pay to acquire that 85%:

$7,225,000 (Fair Market Value of 85% of JPI's stock)
$3,300,000 (Contract Price to Acquire 85% of JPI's stock)
**$3,925,000** (Correct damage calculation)[4]

### ii. Damages Regarding The Forestville Property.

Equipoise seeks damages it claims to have incurred in its planned acquisition and development of the Forestville, Maryland property. Though Equipoise itemizes $276,146 in these alleged damages in its trial brief, the only evidence of money Equipoise spent on the Forestville property is Morton's testimony of the $100,000 he spent for the option on the property. There are three reasons why this sum cannot be recovered. First, there are no claims asserted against any defendant in this lawsuit for these damages. The only injury or damage Equipoise asserts is that "Equipoise would have had a dominant financial interest in JPI after it exercised its option to purchase all of the JPI Class A stock from ITEC. As a further result of ITEC's conduct, Equipoise has also lost profits." (Am. Comp. at ¶¶ 41, 54, 61).

Second, the evidence shows that Equipoise proceeded at its own peril in buying this option. Morton testified that he acquired the option in 2004. As Morton and Price admitted, Equipoise spent this money *before* the Board voted to move to Forestville, and *before* International approved the move. (DTE 78). As late as January 12, 2005, well after Equipoise spent this $100,000, Price still had not submitted a letter of intent to obtain approval for the development of the Forestville property. (DTE 81).

Third, Equipoise could have proceeded with the development of the property, even after Price was removed on March 1, 2005, but chose not to. Specifically, Morton testified that during

---

[4] This argument is without waiver of Defendants' arguments stated in its Motion in Limine No. 5.

13

the March 1, 2005 meeting he held with Dennis Wise, he was given the opportunity to proceed with the development of the property but refused.

### iii. Equipoise May Not Recover Under The Bonus Agreement.

Equipoise has not asserted a claim for breach of the Bonus Agreement, and therefore, may not recover for damages arising under it. Despite including seven counts in its amended complaint, no claim asserts a cause of action in connection with the Bonus Agreement. In fact, absolutely no mention of the Bonus Agreement or request for unpaid bonus payments is made anywhere in the complaint. (*See* Ex. A).

Moreover, the Agreement explicitly states:

> This Agreement shall ***automatically terminate*** if and when **John Price**, by reason of death, resignation or ***removal***, ceases to manage the Dealer Company.

> If this Agreement is terminated, the bonus provided in Paragraph 3 above shall be ***immediately and wholly voided*** as the beginning of the then current fiscal year or period, provided, however, that the Board of Directors of Dealer Company may in its discretion grant Operator such portion of bonus for said year or period and on such terms and conditions as it may feel are justified.

Bonus Agreement at sections 7-8 (DTE 6) (Emphasis added). Therefore, even assuming that any bonus payments are recoverable as damages, Equipoise is limited solely to the bonus payment it claims for year 2004 because Price was terminated on March 1, 2005, voiding any bonus payment to Equipoise for fiscal year 2005. Additionally, there is no evidence of any bonus plan in 2005, or that it was earned.

### D. K. Neal Should Be Dismissed As A Defendant.

There is no claim asserted against K. Neal International Trucks, Inc. or K. Neal Holdings, Inc. ("K. Neal"). Therefore, K. Neal should be dismissed as a defendant in this matter.

Respectfully submitted,

INTERNATIONAL TRUCK AND ENGINE CORP., PAUL KOVACH, PAUL GRZEMSKI, LARRY WAKE, J. PRICE INTERNATIONAL, INC., n/k/a K. NEAL INTERNATIONAL TRUCKS, INC., and K. NEAL HOLDINGS, INC.

By: <u>s/Andrea C. Okun</u>
    One of Their Attorneys

Michael R. Levinson
Andrea C. Okun
Marcus L. Mintz
SEYFARTH SHAW LLP
131 S. Dearborn Street, Suite 2400
Chicago, Illinois 60603
(312) 460-5000

**CERTIFICATE OF SERVICE**

I hereby certify that on February 19, 2008, I electronically filed DEFENDANTS' INITIAL MOTION FOR ENTRY OF JUDGMENT AS A MATTER OF LAW with the Clerk of Court using the CM/ECF system, which will send notification of such filings to the following:

> Anthony C. Valiulis  (tvaliulis@muchshelist.com)
> John H. Ward  (jward@muchshelist.com)
> Autumn L. Sharp  (asharp@muchshelist.com)
> Christopher J. Petelle  (cpetelle@muchshelist.com)
> MUCH SHELIST FREED DENENBERG
> AMENT & RUBENSTEIN, P.C.
> 191 North Wacker Drive, Suite 1800
> Chicago, Illinois 60606

By:  s/Andrea C. Okun
        One of Their Attorneys

Michael R. Levinson
Andrea C. Okun
Marcus L. Mintz
SEYFARTH SHAW LLP
131 S. Dearborn Street, Suite 2400
Chicago, Illinois 60603
(312) 460-5000

16
CH1 11416373.5